Good morning, everyone. You may be seated. Before we call the first case, I do want to announce that Justice Reyes is the third panel member on this case, and we did have a slight panel reconfiguration this morning because one of the judges recused himself. He was previously, I think, somewhat perhaps involved in the underlying action when it was in Chancery. So I will be the other panel member on this case. And with that, we will call the case. Case number 14-0447, State Farm Mutual v. Andrew Traub. If both the lawyers would please step up and identify yourselves for the record. Good morning, Riders. I'm Frank Stevens. I represent State Farm Insurance Company. Good morning. Good morning. My name is Tom Faulk. I represent Progressive Mutual. All right. Each of you will have approximately 15 minutes to present oral argument. And from that, Mr. Stevens, you may save out some time for rebuttal. Thank you. All right. Proceed. Your Honors, this all arises from a single-car accident that occurred back in March of 2008. It involved a young man by the name of Andrew Toy. It was a single-car loss. The driver and the owner of the vehicle in which he occupied had a combined liability limit of $40,000, which was paid to Mr. Toy. He then made a claim for underinsured motorist coverage under a policy with Progressive. That policy with Progressive was a liability limit of $40,000. It listed Andrew Toy as a driver of a vehicle on the declarations page and it listed the vehicle that he owned as an insured vehicle. It provided $500,000 of underinsured motorist coverage. And there has never been any dispute and any denial by Progressive that it does provide underinsured motorist coverage. Progressive's dispute in this case is how it shares or whether it shares underinsured motorist coverage with State Farm. And we're talking now about State Farm Mutual Automobile Insurance Company, who issued three policies of automobile insurance, two to a gentleman by the name of Randall Toy, who is Andrew's father, and one policy to Terry Zenner, who was Randall Toy's second wife. After Andrew made his claim for underinsured motorist coverage with Progressive, Andrew then made claims for underinsured motorist coverage under two policies of auto insurance issued to Randall Toy and one policy of automobile insurance coverage issued to Terry Zenner. He also made a claim for underinsured motorist coverage under two umbrella policies, one issued to Randall and the other issued to Terry Zenner. State Farm denied, State Farm auto denied the auto policy claims for underinsured motorist coverage because State Farm asserted that Andrew did not meet the definition of an insured. Specifically, he did not meet the definition of a relative because he did not reside primarily in an insured vehicle. with Randall, his father, or Terry, Randall's wife, at the time of the accident. State Farm Fire denied coverage under the umbrella policies because neither umbrella policy carried an endorsement for underinsured motorist coverage. In the lawsuit, the declaratory judgment action was filed by State Farm, the counterclaim was filed by Progressive. The issue in this case is primarily whether Andrew is a relative within the median of State Farm's auto policies. We're really not in dispute anymore on the umbrella policies. The umbrella policies were ruled on about four months after the trial court ruled on the auto policies and the trial court found that there was no coverage under either of the umbrella policies which supposedly provided a million dollars of coverage. That has not been appealed. It's not an issue before your honors. So the only issue, the only policies at issue really are the State Farm auto policies, the two to Randall and the one to Terry Zenner. And the issue, as I said, is relative. And relative is defined as a person related to you or your spouse by blood marriage or adoption who resides primarily with you and includes your unmarried and unemancipated child while away at school. Let me ask you this. Are you waiving the issue that Andrew is not a stepmother's child under insurance policy? No. No. Did you bring that up before the trial court? Yes. Where? In the motion to reconsider. Is it inappropriate to bring up an issue in a motion to reconsider? Your Honor. That's not bringing it up before the trial court. Your Honor, this State Farm's motion for summary judgment argued both on behalf of the auto company and the umbrella policy. None of the five policies applied. That was argued in July of 2013. Well, didn't Progressive bring that out before the trial court? Yes. But you didn't respond to it. It's true. And if you didn't respond to it, wouldn't that be waived? There's no case that says that, Your Honor. Pardon? There's no case that says that. And I can answer that question. 304A. Well, do you have a case that allows you to bring an issue on a motion to reconsider? Can you show me one case? Yes. Oh, I can show you a Supreme Court rule, 304A. Well, can you show me one case that talks about that you could do that? Nothing other than what I cited in my brief, Judge. Honestly, Your Honor, I can't emphasize enough that 304A addresses it specifically. It can't be any more clear. You can reconsider anything if the order is not final. That's what it says. How can you reconsider something that hasn't been considered? You can bring up anything. Anything in a motion to reconsider even that you didn't bring it up before? I mean, isn't a motion to reconsider a motion made before the court because they've either made some error or there's some newly discovered evidence? Here you didn't bring up the issue at all. You bring it up on a motion to reconsider, and then you say that we should look at that with a de novo review? Yes. Do you have a case that would say that? With all due respect, Judge, I just told you I have no cases beyond what I cite in my brief, but I do have the language of the Supreme Court. But I could show you lots of cases that say, you know, that that would be an abuse of discretion, Senator. Well, two things, Judge. First of all, the trial court judge did reconsider. He did not deny the motion to reconsider on the basis that it was too late. He actually heard and allowed briefing and decided it. It's an abuse of discretion standard to determine whether or not the issue has been waived. The trial judge heard the argument. He ruled on it. He did not say it was too late. He ruled on it. Well, okay. You know, I'm not going to argue points with you. I just wanted to bring it to your attention.  If that's a hill you have to climb. I understand, Your Honor. But, Your Honor, I don't think the language of 304A can be any more clear. In the absence of such a finding, any judgment that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before the entry of a judgment. That's exactly the situation here. Yeah, but State Farm chose not to respond either in its summary judgment briefs or at the hearing on the summary judgments. On the pro rata? Yeah. Okay, Judge, let me explain to you. First of all, there were five policies that State Farm and State Farm Fire had issued. Two of those policies were umbrella policies. Was State Farm Fire obligated to argue that the umbrella policies somehow prorated with the $500,000 progressive policy when the judge hadn't even made any decision regarding whether the umbrella policies applied? Had he found that the umbrella policies applied, we wouldn't be here today because progressive would have paid $500,000 under that proration with million-dollar umbrella policies. It was really too early at that stage to even discuss the prorations because the trial judge refused to decide whether the umbrella policies applied. If you look at his judgment order from October of 2013, he has a footnote that says it's not necessary for purposes of this order today to decide whether or not the umbrella policies apply. There was no reason for that. You can't put that in a good light. There was no explanation for why he refused to decide whether those umbrella policies applied. And had he decided whether those umbrella policies applied, everything that progressive wrote regarding prorating those policies, State Farm's auto policies would have gone right out the window because now the proration would have been with $2 million umbrella policies. So it was too early at that stage. Secondly, it had always been State Farm's position that none of these policies applied. At that stage, until there was a finding that the policies applied, why would we strategically start arguing how they prorated when we're arguing in our first breath that they don't apply at all? To me, that's a concession that we didn't need to make in front of the trial judge at that time. And the fact that the trial judge four months later ruled, let's put this to rest without any further argument. He said, let's put this to rest. The umbrella policies don't apply. Nobody said anything regarding the umbrella policies during those four months, and the judge just said the umbrella policies don't apply. There is no reason why he could not have said that in October of 2013 when he first ruled on State Farm's combined motion for summary judgment. There was really no point in prorating, discussing prorations, until somebody, the court, told us which of these five policies were going to apply. If all five policies applied and there was an additional $2 million of coverage, Progressive would have been entitled to nothing other than a declaration that it owed $500,000 of coverage. This really is not a dispute involving Andrew Toik. For reasons I'm not really quite aware of, Andrew Toik has not filed an appearance in this case and is not arguing the fact that these policies do not stack and provide no more than $500,000 in coverage. This litigation took well over two years. Progressive admitted it had a policy that applied, but we spent two years trying to figure out how much of the $500,000 these insurance companies were going to pay. Andrew Toik never got a penny more. All he got was a delay in any payment that he was entitled to. But I go back to what I said before. Andrew Toik was not insured under Zenner's policy or Randall Toik's policies, his auto policies. He did not reside primarily. He lived ñ Does the policy, though, have this other definition of relative? There's two definitions of relative in the same policy. Two sentences, Your Honor. That's quite right. Two sentences. There's the definition of relative, which means, which says that you have to be related by blood marriage or adoption and reside primarily with you. And then there's the qualifying sentence that follows that says it includes your unmarried and un-emancipated child while away at school. That was the focus of the trial court's written opinion as to whether those two sentences are read in the conjunctive or the disjunctive. And the trial court, following a federal district court case, reasoned that those are read in the disjunctive. And if you're an unmarried, un-emancipated child away at school, it didn't make any difference where you resided primarily. Now, the Alabama Supreme Court, and I think in a much better argued and reasoned opinion, stated that, no, you have to read them in the conjunctive. And it's only a qualifying. The second sentence is only a qualifying sentence. And if you don't meet the definition of the first sentence, there's no reason to even go through the second sentence. And I'll tell you, I'll give you an example as to how absurd this really is. If you have, for example, a 17-year-old girl who has divorced parents and she lives with her mother, and she's getting ready three months and three months to go away to school, and she's involved, and she lives with her mom, and she's involved in an accident. She resides with her mom and she's involved in an accident. And June 1st, the day after she graduates, she's entitled to uninsured motorist coverage only under her mother's policy. Now you wait until September 1st, the first day that she's away at school and she's involved in an accident. And now, according to the trial court, she's entitled to policy coverage under both her mother's policy and her father's policy, because you read those two sentences in the disjunctive and one doesn't depend on the other. The Alabama Supreme Court recognized the absurdity of that position and said you have to read them together in the second sentence. It only means to qualify the first sentence. And if you don't in the first instance reside primarily with your parents, you can't be considered under the second sentence. Do most of the cases say that children that are away at school are not residing primarily with their parents? No. Let's take a 12-year-old who goes to some prep school or boarding school. Would you be arguing that that child doesn't reside primarily with the parents? Never. You wouldn't? No, I wouldn't argue that. Well, why would you argue it then for a college student? Because he's not your typical college student. This gentleman registered to vote in Colorado. Oh, okay. Under Illinois Supreme Court law and Colorado Supreme Court law, you are not entitled as a college student to register to vote in the town in which you're attending college unless you can prove that you reside there. This young man, he had no presence in Chicago. He can't even remember. He gave a deposition. Terry Zenner gave a deposition, and Randall Toy gave a deposition. Now, one of them could remember the last time he came back to visit. He had no presence at all in Chicago. He had a bedroom. And as we point out, virtually every parent whose children leave the house keeps the bedroom, at least for some period of time, as their bedroom. They don't go turning it into a boarding house. He had a bedroom there. He had virtually no possessions there. Were the two things he did was register to vote and he obtained a driver's license? Those are two of the things that he did. Yes. All of his mail was going to Colorado. Pardon me? All of his mail was going to his Colorado address. According to the cases, that's an important factor. All right. He said he would come to his parents' two homes on occasion. There might be some junk mail. But all of his important mail addressed to him was going to Colorado. All right. And you have to have a physical presence, too, to show residency. He can't even remember the last time he came to Chicago. That does not establish a physical presence. When you say this second paragraph, you're almost interpreting it as an exclusion, aren't you? It's an exclusion? No, Your Honor. I don't believe I am. And I think this is addressed in the State Farm v. Brown case, the Alabama Supreme Court case, where it says the second sentence is obviously intended to expand on the first sentence and to indicate that a child who is away at school is not excluded from the term relative in the policy by virtue of the language that was primarily with you. It's not an exclusion. It's an expansion. It just makes clear that if you live primarily with your parent and then you go away to school, you're still going to be covered under that parent's policy because you were living primarily and you have an intent to return back to that parent. Andrew Toig never had any intent to return back to Terry Zenner and Randall Toig's home. He never did, and he never had any intent. In fact, he was asked at his deposition, even though you're away at school, he was asked by counsel, even though you're away at school and you're attending school in Colorado, did you have an intention of returning to Chicago? And he said, I don't know. Residency requires an intent to return. He didn't have that intent. He was never a resident of Andrew Toig's or Randall Toig's home at any relevant time to this litigation. Well, here's a problem that I see. Maybe you could tell us what you think about this. In the definition of relative, you know, the second sentence says it includes your unmarried and unemancipated child away at school. So State Farm chose to use this vague pronoun it in the second sentence instead of a particular noun. And if the pronoun it refers back to the word person, then the two lines are connected with the second line expounding on the meaning of the word person in the first line. However, if the word it refers back to the word relative, then each line is independent defining the term relative. And that's what the case law says. No, Your Honor. With all due respect, that's what one case says. It's a federal district court case for Mississippi. That's what the judge said. In that same opinion, he said it's clear you could read it either way. I mean, you can't have it both ways. You can't have a judge say that it's ambiguous and then two paragraphs earlier say that it's clear and you can reasonably construe it either way. It's either ambiguous or it's not. And he says that… Well, if it could be construed either way, then it's ambiguous. Well, I don't think it's ambiguous. He said it wasn't ambiguous. The judge whom you're relying on or you're referring to said it was ambiguous. He said earlier that it's not ambiguous. That opinion goes back and forth in several different directions. Well, you know, a person could be a he or a she, but I don't think a person could be an it. How does a person become an it? I think it is a relative. Whether he or she is an it, I guess it's subject to debate, but I think a relative can be an it. Okay. Do you have any case law that says that a person can be an it? No. Okay. Did you have more at this time or do you want to save some time for rebuttal? I'll save some time, Judge. Do you have any idea how much time I have? Well, we'll give you whatever time you need. Yeah, we always give you whatever time you need. Okay. Thank you, Your Honor. Certainly. Mr. Buck? Good morning. I'm Tom Buck. I'm here on behalf of Progressive Northern Insurance Company, and we're here to ask the Court to affirm a certain court's judgment. I want to make one point before I forget. There's no question there's coverage under the Progressive policy. We stepped up to the plate. We honored the claim. But the fact that there's coverage under our policy does not negate coverage under the State Farm policy. The policies recognize that there may be coverage under more than one policy. That's why there are anti-stacking provisions, and that's why there are other insurance clauses. We're here to honor the claim, and we believe State Farm should pay its fair share. Another point I want to mention before I forget is that much mention has been made by State Farm in its briefs that Andrew Toit never intended to return to Chicago, in fact, did not return to Chicago. I think the record reflects otherwise.  She testified that after the accident, Andrew returned to Chicago to recover. She and Dr. Toit had a discussion. Should Andrew continue to split his time in Chicago on a 50-50 basis? Ms. Wines had just sold her house in West Montana and moved into a temporary apartment on the third court. She was a registered nurse working at Northwestern. She was also taking time from work because she had a medical condition that she was taking care of, and the decision was made between the parents to have Andrew live with her so she could help in his recovery. And he stayed in Chicago until he was well enough to return to Colorado College to continue his junior year. The one contested issue before judgment was whether or not Andrew was an insured relative under the State Farm policies, and as discussed already here today, that definition contained in the State Farm policy is twofold in format. There's the relative who resides primarily with the name insured at the time of loss, and if that were the only definition, as a parent, and when your son or daughter either goes to boarding school or goes to college, you're wondering, are they covered under my policy? Is my son or daughter residing at school? Is my son or daughter primarily residing at school? These are six-month policy periods, so the policy periods in this case ran from the fall to the spring, the entire school year. The answer, those issues are put aside by that second sentence of that definition, not to worry. When your child's away at school, he's an insured relative. Well, is counsel correct when he says that there's really only one case that supports this interpretation, that being the federal district court case? Judge, there's the federal district court case. There are other cases that interpret child away from school. There's a case in Florida, a case in West Virginia. I'm trying to recall, if I may. Sure. Sure. There are cases that come close, but the case in Mississippi is the closest. That's the Blanchard case. There's Drake v. Snyder, which is a West Virginia case, Dwell v. State Farm, which is a Florida case, and then a Missouri case called Crump v. State Farm. They're similar in facts, not exactly on point. There's no Illinois case that we're aware of. So they're a persuasive authority, and interesting enough, they're all State Farm cases. They're not the other policy insurers. So when it comes to that second definition, there are four criteria that you have to meet. You have to be unmarried. You have to be unemancipated. You have to be a child. And the fourth one is that you have to be away at school. Now, it's undisputed in this case that Andrew was unmarried at the time of loss. He was unemancipated. He was financially dependent upon his parents, primarily his father. He was a child, Dr. Toig's son and Ms. Zinner Toig's stepson, and I can address that distinction. And he was away at school. So the four criteria for coverage are met. As far as the argument of stepson versus son, which is first grace post-judgment, if you go to the first definition of relative, it includes a person related by blood, marriage, or adoption. That obviously includes a child, a natural child. And we believe it's reasonable to interpret the word child in the second sentence of the definition to include a stepchild as well. Certainly the policy is not written to exclude a stepchild. And if State Farm's theory is right, if it doesn't include a stepchild, And what State Farm is telling us is that when a natural child and a stepchild are at home, residing primarily with the mother and the father or the mother, then they're covered. But the minute they both go to college, the natural child continues to get coverage, but the stepchild does not. And that just makes no sense whatsoever. It would be the same case in adoption. State Farm would probably take the same position in the case of an adopted child. But then again, that's not the issue before the court. So we think it's plain and clear that there's coverage for Andrew Twigg. He was a boarding student, and then he was a college student. It's our view that that definition is expressly intended to cover students and children like Andrew. One other issue was raised by State Farm post-judgment, and that was the issue of sharing. Again, we believe that was untimely raised, and I did want to make one point about the argument of an interlocutory order in a Rule 304A finding. It is true that if a judgment order is interlocutory in nature because all of the claims have not been then that judgment may be vacated and modified at any time. But that doesn't change the standard of review. That doesn't change the rule that you can't raise a new legal theory when you go to reconsider. And the judge considered the motion for reconsideration because there were issues that were argued before judgment was entered, which State Farm asked the court to look at again. So the interlocutory nature of the order, or of a judgment order, as opposed to a final judgment order, goes to the time limitation that you have to contest that judgment. So in the case of a final judgment, there's no question it's 30 days. That's when you have to file your motion for reconsideration. And in the case of a judgment order that's interlocutory in nature, you have more time. Your 30 days doesn't start ticking until all the claims have been resolved. So in our view, the rule of reconsideration is the same if the judgment is an interlocutory order or a final order. You know, when the policy says away, it's using the word away at school, but the word away, it doesn't give any time limitation, does it? The word away. It does not, Your Honor. So how long a child may be away at any school could be as long as he's away. That's correct, Your Honor, and most parents hope it's only four years. Sometimes it's longer. That's right. Some are on the five-year and six-year plan. Some kids are always in school. I wish I still were in school. No, it does. And I wanted to raise one point about the word it. I read the word it to mean the definition, so that the definition of relative includes your unmarried and unemancipated child away at school. That's how it fits. That's what it would appear. So we asked State Farm to share, and that's what we're here to ask. We asked the circuit court that, and we asked this court to affirm the circuit court's decision in that regard. Unless the court has any further questions. Thank you very much. All right. Mr. Stephens. I make the point in both of my briefs, Your Honor, and I think, Your Honors, and I think I've made the point here today that this is an unusual circumstance. These are hard facts. But this young man was not away at school. He was away with no intention of returning. Most college kids do not go to another town and register to vote. They can't. And the reason why they can't is because they can't show they had a residency in their college town. To find that Andrew Toy did not have a residency in Colorado is going to do great violence to Illinois election laws. The Supreme Court has said you can't register to vote at your college town unless you show you have a residency there. He had a residency in Colorado. He had a primary residency in Colorado. And how do we know that? Because he can't even remember the last time he came to Chicago before his accident. Neither can his parents. And we know he had a residency in Colorado because he was registered to vote, conducted all his business, had his license in Colorado. We know he had a residency in Colorado and not in Chicago because of all of those factors.  This clause, this relative clause with respect to children away at school does not cover children like Andrew Toy. And the fact that Andrew Toy registered to vote in Colorado shows that he had a residency there and it was his primary residency. Counsel for Progressive said to you in his first sentence that Progressive stepped up to the plate. Stepped up to what plate? Andrew Toy is a named insured on the policy. Andrew Toy's 2006 Subaru is described on the policy, the Progressive policy. Stepped up to the plate? There is testimony from both Randall Toy and Terry Zenner that they never even told State Farm about Andrew Toy. No one at State Farm even knew Andrew Toy was the son of Randall Toy or the stepson of Terry Zenner. And why? Because he didn't reside there. He didn't live there. He came to visit infrequently and stayed for a night or two. It wasn't important to tell State Farm for the purposes of the Toy's because the Toy's knew that he didn't reside with them. With respect to this pro-ration, the argument regarding the pro-ration was made primarily exclusively by Progressive in its motion for summary judgment. And I am the first to admit that I did not address it in my reply to their motion for summary judgment. Once again, what was I supposed to address? Was I supposed to address a pro-ration that included two umbrella policies? There had been no ruling as to whether the umbrella policies applied. In fact, that didn't even occur until four months after the judge found that the auto policies applied. It was nonsense for me to start pro-rating not knowing which of these policies, if any, applied. And there's distinctions, too, between whether Terry Zenner's policy would apply and Randall Toy's policies would apply. So what was I supposed to pro-rate? But I'll say, Your Honor, and I understand your point, but they don't cite a single case, not a single case that says you can't reconsider when there's been less than a final adjudication of all claims to all parties. They can't cite a single case. The two cases they cite involve final orders. This order entered by the trial judge was not a final order. But more importantly, or just equally important, the trial judge did reconsider. And the only way to get around that is to say he abused his discretion, but Progressive doesn't say that. Finally, with respect to the pro-ration, there's two ways to pro-rate. One way is pro-rata, and the other one is straight, where you just divide the liability amongst a number of policies. The trial judge, in this case, decided to do it just doing it straight, which means that a $500,000 policy issued to Progressive, to Andrew Toy and his mother, has the same contribution to the $250,000 coverages issued by State Farm. We cite a number of cases that say that when both policies include pro-rata language, it's incumbent on the court to pro-rate the policies on a pro-rata basis. That's still the law of the First District. The formula for pro-rating on a pro-rata basis is contained in our briefs. Under that formula, State Farm's liability under all of its policies is substantially less than what the trial court found. But I don't even believe that the court needs to get to that issue because Andrew Toy did not primarily reside with Randall Toy or Terry Zenner in March of 2007 when he had this accident. We ask that the trial court's order for summary judgment be reversed, that the court find that there's no coverage for Andrew Toy under the State Farm auto policies, and that the court declare that Progressive provides its underinsured coverage limit of $500,000, just as it contracted for when it issues its policy to Andrew and his mother. We will take the case under advisement. Judge Justice Reyes is the third panel member, which I indicated, and of course he will fully participate in the decision in this case. But he is unavailable today for this argument. We thank the attorneys for your presentation and will take the matter under advisement. Thank you, Your Honors. We're going to now take a brief recess to reconfigure our panels for the next cases.